May it please the court, Gail Ivins, appearing on behalf of defendant appellant Ms. Barghi. One of the reasons that this case is before the court is because there was only one count of the two count indictment that was eventually tried to the jury. The original indictment in this case charged both the theft of government property under 641 and social security fraud under 42 U.S.C. 408. And had both of those counts gone to the jury, the intent issue in some sense would have been settled by the requirements under 42 U.S.C. 408 that the government prove certain things about the defendant's intent when we're faced with a situation where it's a failure to disclose. So this is not, you know, the kind of case where someone walks into the social security office and grabs a bundle of bills off the counter, and we call it theft. And it really doesn't matter, I guess, if those are the government's dollars or some other person's dollars who got left on the counter. In this case, the alleged stealing took place in a more subtle manner, which is this failure to make certain disclosures. And its defendants are – It's a little complicated because sometimes it appears that – and this is a very strange thing to call stealing. And there was no – there was no instruction to the jury about what stealing was as such, as I understand it. But sometimes it appears that the theory – and this is true both in your papers and in the government's paper – that the theory is that she didn't make disclosures. And other times the theory is that she didn't – in fact – she, in fact, was not eligible. As opposed to not making – as opposed to not being eligible for not making disclosures, sometimes it appears that the real problem is that she wasn't, in fact, eligible. And that's a little different. It comes out a little differently. Well, it does, Your Honor. And I actually did try – I know something but not a lot about social security law. And I actually did sort of try to go through – I did not write the briefing in this case. I'm handling it for a lawyer from our office who is on her honeymoon. But I did go through all of the documentation and try to figure out for myself where exactly, at which times she was ineligible versus eligible and had not made a disclosure. And I think that the problem in this case is that the 408 charge itself charged two specific failures to disclose. One was the one – I believe the one property. The other was the marriage. And that those were two things she was supposed to have disclosed. And that count didn't go to the jury. There's at least that one month where the money from the sale of the property went over that first-of-the-month date. So she has money in an account in her name that's not the power of attorney account or anything, where it goes over the first-of-the-month. And I think that's pretty clear under the Social Security regs that had she at that point disclosed that information, that would have disqualified her for at least that month. So at a minimum, there's one month there that I easily identified where she was ineligible, had she made the disclosure to receive the benefits. That doesn't really, though – that's a Social Security fraud issue in terms of her overpayment. And I – you know, the Social Security Administration made a determination that, you know, had they known about all of these properties at the specific times that she had them, and they would have made a determination, I assume, that she had power of attorney, so that was her money and not her son's money. If they'd done all that, they made a determination that the overpayment was the $17,000 amount. But I'm not at all clear that that was sort of what they charged when they originally charged the Social Security fraud. And I think that's one of the reasons that this is as complicated as it is in terms of the factual basis, because the government just says it was stealing to take the money at all, because she owned property from 1994 to 1998 that she didn't disclose on the original form. But that factually is very hard for them because of her, you know, original language not being English. And if it's their burden to prove that she knew that, they're relying on forms, some of which were not even her forms, to prove that. And I think that the argument that defendant is making on appeal is that, at a minimum, on plain error review, I understand, but at a minimum, there had to be an instruction to the jury that she knew that what she was doing was illegal. And when the... But you don't exactly mean that. Yeah. You don't mean that she had to know that stealing was illegal. No. What she needed to know was that, in essence, I mean, sort of like in Morrisett and in Derington, that the money wasn't hers. And it wasn't hers because she didn't have a right to it. Right. So it's sort of a second-level illegal. It's not that the ultimate crime illegal. It's the underlying question of whose property is this. Yes. Is that what you're saying? Yes. And I think there were, you know, had I been the trial attorney, I might have crafted some different instructions based on Social Security law. But I think at this point, before this Court, with the record that we have, at a minimum, that knowledge instruction, which did not delete the problematic second sentence... The instruction does say, Social Security income benefits to which she knew that she was not entitled. Why isn't that good enough? That, and I believe we agree that that is good enough, had the Court not then gone on to instruct on knowingly. The problem is the Government, the Court then instructed, the Government is not required to prove that the defendant knew that her acts or omissions were unlawful. But those acts and omissions in context are the stealing, and that's true. She doesn't have to know that the stealing is unlawful. If that's the context. I mean, if the jury read that as saying, she doesn't have to know that stealing is unlawful, but did she have to know that her failure to disclose was unlawful for her to know that she was taking money that didn't belong to her? But that just seems to me kind of tautological wrapping it right back around to where it started. And so if you take the two parts of the instruction, and I think I understand it's a fairly nuanced argument you're making, on plain error review, if we kind of look at it in context, I'm kind of hard pressed to figure out where the error would be precisely. You're saying by having the two parts of the instruction? That by, the Court gave the 641 instruction, and had the Court only given the 641 instruction, I think that on plain error review, we are out of luck. I mean, we didn't ask for a theory of defense instruction, et cetera. But what the Court did in this case that we are arguing was plain error, was to go on and then give an additional knowingly instruction, in addition to the 641 instruction. And to not delete the second sentence, which this Court has stated that the second sentence of instruction should not be given, where an element of the offense requires the government to prove that the defendant knew that what the defendant did was unlawful. And in this case, when you have theft, alleged theft by omitting to make disclosures, which appears to be the government's theory, which would have to be, it's an overpayment case. I mean, the case against the defendant is that she received an overpayment of Social Security funds, which is clearly a civil problem. The question is whether it's a criminal offense. And in order for the government to prove that, I believe that under the case law in this Court for 641, they had to prove that she knew what her acts were, were unlawful. And that is wrapped up in the term stealing, if it's defined correctly for the jury. And I think that had the second sentence not been there, there is a reasonable probability, or at least some evidence in the record, that would have supported an acquittal rather than a conviction. And if the Court has no further questions, I would save the balance of my time for rebuttal. All right. May it please the Court. Eric Silver on behalf of the United States. I'd first like to start with I respectfully disagree to some extent with what the government had to prove in this case. I believe what the government had to prove was that the defendant was not entitled to these benefits, and therefore that she took money that she was not entitled to. Her failure to disclose assets, as we indicated in our answering brief, was relevant to that because it showed her intent to steal. But it was not directly relevant to the question of whether she, in fact, stole or didn't steal. Well, are you saying that if, and I think you are, that if I was sitting, you know, if I was getting Social Security benefits of any kind, I mean, not only SSI, and a check shows up in the mail, which looks to me like it might be more than I'm entitled to, but the government sends it to me and I don't send it back, I'm guilty of stealing it? Well, I do think she has to know that she's not entitled to it, so I wouldn't. Well, I don't really. It looks to me like it's more than I've been getting, you know, and I don't look into it. It happens all the time, doesn't it, that the government makes mistakes and sends people erroneous checks? I mean, I conceive in that circumstance it might be appropriate in some circumstance to have a JUUL instruction, but apart from whether you could have that. But if I knew it was an overpayment and kept it, you'd say I was stealing? If you knew, yes. If I did nothing to get it. I just sat there. Yes, I think that's right. If you knew you weren't entitled to the money and you kept it, that would be stealing government money. That's a strange use of the word stealing, isn't it? Most people would think that it was something. I mean, it might be a crime, but they wouldn't call it stealing. I would respectfully disagree in that circumstance because in the scenario that you presented, the person knows they're not entitled to the money and nevertheless keeps it. It would be no different than, or at least only slightly different, than going to someone's house and seeing some money out lying around and taking it. In that circumstance. Well, it is different because it was sent to you. You didn't take it. I mean, there was a difference between picking something up that isn't yours and somebody, the government essentially representing that they think you're entitled to it. And you say, well, I don't know why they think that, but, you know, they must think so. Well, to take, I guess, maybe a closer scenario, someone's at your house that's a friend of yours and you see $10 fall out of their pocket and you decide to keep it. I think in that circumstance, given that you know that it's their $10, you would be stealing it and it really would be no different than the scenario you have here. You've got this money. You know you're not entitled to it. And I do think it's appropriate. But that is your position. Your position is that it has nothing to do with anything she represented. If she completely passively received it and didn't return it, she was stealing it. That's right. The failure to disclose in this case was relevant, but it was only relevant because the government argued her failure to disclose showed intent to steal. So it was relevant only to rebut that evidence that the government established. So it wasn't directly related to one of the elements the government had to prove at trial. I do think it's important also turning to the instructions that we have here. Off the top of your head, do you know any case on that theory that's ever happened in the extreme situation that I suggested without any misrepresentations? I apologize, Your Honor. I haven't looked at that. I'd be happy to submit. I'm just curious. I would think it comes up fairly often in the Social Security context. People die. They change. Whatever. And sometimes the Social Security Administration doesn't know and they send them the check. And if the person knows they're not supposed to have the check, they're supposed to send it back. They're not supposed to say, oh, you made a mistake. I do understand. So that would be stealing in your view, right? Yes, and I do understand that people are charged for that type of conduct on numerous occasions. I'm simply not aware of any published decision that's talking about this situation. But I think when we're looking at the instruction, what sets you apart from the idea that this actually isn't a defensive trial to the charge itself, is it's important to look at the two parts of the sentence. And there really is the first part of the knowing instruction, which says you don't act knowingly if it's through ignorance, mistake, or accident. And that allows you to raise a factual type of claim. And that includes a claim that you didn't know a kind of legal operative fact, which is what the Fierro's case is talking about. I think Lipporetta provides a good example of that, which indicates that when you're dealing with receipt of stolen property, you have to know that you are receiving stolen property. But what you don't have to know is that it's unlawful to receive stolen property. And this instruction allowed the defendant to present a kind of factual defense that was based on a legal proposition, which was she acted through ignorance, mistake, or accident. What it didn't allow her to say was that she didn't know that that conduct, her stealing this money, was unlawful, which I understand the defendant not to be arguing that she had to know that. Well, I think maybe a slightly refined version of it is this, that although the instruction says that she had to know that she wasn't entitled to the benefits, the next sentence says, or the definition of knowingly says, that she doesn't have to know that her acts or omissions were unlawful. And the problem is there's two different unlawfuls running around here, as your brief very nicely demonstrates. It's a very good brief, by the way. But it's one of the things that was very good about it is that it separates out these two problems, whether stealing is unlawful and whether she didn't have a right to the benefits. And yet the instructions arguably confuse those two. Well, I think on the latter issue, because I think first it's important to recognize when it was on the issues of whether she was – she had to disclose this information or whether her assets rendered her eligible for these benefits, it was never presented to the jury as a legal claim at the outset. They were never given a statute and said this is what – she didn't comply with this because this statute or this regulation requires her to disclose or this statute or this regulation. Well, leave the disclosure aside. Let's take your theory, that she wasn't entitled to the benefits. And that's what the instruction said. But entitled to the benefits means legally entitled. What else does it mean? Well, I mean, I don't think it was presented to the jury as legal entitlement. It was presented as she had $2,000 of assets, she was ineligible. So I think as it was presented, it was presented as a factual question so that there was no likelihood of confusion between these two – the two knowledge definitions. I would think a jury would be – I'd be confused. Well, even if you accept – You said not entitled to it. It means it's not – the law doesn't provide for you to have it. That's what it means. Well, I think even if you accept that the jury would understand that that was a legal-based claim, I don't think that that's what this instruction impairs. I think what it impairs is the ability to claim that in receiving benefits to which you're not entitled, you didn't know that that was unlawful. But you have to – the government had to show she knowingly received benefits to which she wasn't entitled, so she knew she wasn't entitled to them. And that's a factual claim. It's dressed up as a legal claim here, essentially, because it involves a legal issue. But it really is a factual claim. It's the kind of quote from the Fierro's case. This type of defense would have been available to appellants, and this is the ignorance of law. In this case, if, for example, they had asserted reasonable grounds to believe that the workers were not aliens or that they had been legally admitted to the United States, it cannot be extended to cover an assertion that while they knew that the workers were illegal aliens and they knew they were transporting or shielding them, they were unaware that Section 1324 prohibited their conduct. Well, that's exactly right. The only question is whether you're going to confuse the jury with this other sentence. I wonder if you could briefly address the other issue. And I can just tell you slightly, quickly, what's bothering me about it. I understand that the government is essentially now conceding that she, although it represented otherwise to the district court, that she did not, in fact, on these forms have to report the earlier transactions. So if that's true, what is the relevance of this, of admitting them, and why is it a prejudicial? Well, I think, let me take a step back and say before trial, the government had two theories on which that they would be relevant, which was that she owned them through the relevant time period and she was required to disclose them on the form. I don't think either of those actually proved true with the evidence of trial. She didn't own them during the relevant time period. And the question itself directly didn't require an answer. And to some extent, this shows why you need to raise the evidentiary objections at trial. But at trial, what the evidence was, it's not from Andrews, was not that you had to answer the specific question on the form, but that when you're going through an interview, that they ask assets all the way back to 1994 when she applied. So the evidence was that this would have been asked, and this is at Excerpt of Record 130 and 132, that she would have had to disclose this information, because this occurred during an interview, which is indicated on the front of the form at Excerpt of Record 328. There's the interviewer's initials. And you're saying that, form aside, it was relevant to her overall state of mind. Yes. On a 404B theory or something, or what? Well, I think it's inextricably intertwined. I mean, it's part of the same transaction in which she received the... Wasn't she required to disclose later? That's right. I mean, it's sort of like she might not have had to say it then in 1994, but by 1998, she was supposed to disclose. Well, at Excerpt Record 143, Andrew states that she has an ongoing duty to disclose her assets that she applies in 1994, and Roberts, Special Agent Roberts, says the same thing at Excerpt of Record 229. Could you clarify just one thing for me? I didn't know whether all of this dissolves, because when Exhibits 14 to 18 are being admitted, which seem to be inclusive of these so-called irrelevant or quasi-irrelevant properties, they were admitted without objection. Is that correct by her counsel? That's correct. I mean, in other words, the counsel said no objection, not just nothing. So my question is, is there even an argument at this point? Well, I see my time is up. May I respond? Go ahead. The government's position obviously is it's waived because the defendant knew the ground that the defendant wanted to object, and so this is specifically aware of the objection, made a deliberate choice in this circumstance not to raise the objection at trial. And this is ñ I mean, it's not like there was a long period of time between the motion and limine and when there was a need to present this objection. It was the same day. The motion and limine was in the morning, and the admittance of the evidence was in the afternoon. So, I mean, I do think it's clear in this circumstance that this would be waiver rather than simply plain error review. Thank you. Thank you. Just briefly, I want to look for ñ I cannot represent that I did an exhaustive review, but I did look at this question of there must be lots of cases like this. You know, why are we having so much trouble finding a case on point? And there is ñ there are a lot of cases, but they're all under 42 U.S.C. 408, and many of those cases also charge this statute, the 641 statute. And I believe there are one or two, maybe a few more cases in this circuit that are unpublished that don't go into any of the details that we would need for purposes of this discussion, but I think the reason the issue doesn't come up in a published decision is because they're usually charged in tandem, and that the 42 U.S.C. 408 has those specific intent requirements clearly set forth. There are no pattern jury instructions for that, but I'm assuming that most courts must follow. Why isn't there a specific ñ why isn't there sufficient specific intent that she had to know that she wasn't entitled to the benefits? Why isn't that sufficient? That is sufficient specific intent, but in order for her to know she wasn't entitled to the benefits, she had to know her conduct was unlawful. And that's why it's that second sentence in the second instruction that's the problem. Well, it's which conduct. It's very odd. It is very odd. And I do think ñ but I think that the reason that this is not normally a problem is because normally it's very clear what she has to know was unlawful, because they're in the other instructions. Do you have anything you want to say about the second issue? Only to clarify that ñ I mean, unfortunately, I can't disagree with opposing counsel's description of the record as it currently stands. But to clarify that I believe that the factual information about those properties is that they were sold before the 98 interview, and that they are relying on what would have happened, not what did happen at an interview. And I think that that's a fairly shaky evidentiary. It wasn't actually asked at the interview? There was a lot ñ I don't believe it was actually asked at the interview. I thought it was actually asked at the interview. The form ñ I mean, they've conceded that their original position, which was that she was supposed to report on the form, is not correct. But I thought that it was actually asked at an interview. I would have to apologize to the Court today. My familiarity with the record is not as complete as it should be. But I thought that was one of the interviews where they talked about what would have been asked, and that there were several of those occasions where they relied on what the Social Security Administration normally does rather than someone testifying, I did ask her that question. We'll take a look. We'll just go back on the record. Thank you very much. Thank both counsel for your arguments. United States v. Bargy is submitted.
judges: Berzon, McKeown, King